IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEPHEN ROBERT MONROE,
     Plaintiff,

vs.                        Case No.  3:14cv356/MCR/EMT

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,
     Defendant.
_____/

## **ORDER, REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Carolyn W. Colvin as the Defendant in this case.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.   PROCEDURAL HISTORY

On May 18, 2010, Plaintiff filed an application for DIB, and in the application he alleged disability beginning July 15, 2002 (Tr. 16).[2]  His application was denied initially and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ").  A hearing was held on August 14, 2012, and on August 31, 2012, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (Tr. 16–23).  On May 29, 2014, the Appeals Council denied Plaintiff's request for review (Tr. 1).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

---

[2] All references to "Tr." refer to the transcript of Social Security Administration record filed on January 13, 2016 (ECF No. 18).  Moreover, except as noted below at footnote four, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

## II.   FINDINGS OF THE ALJ

On August 31, 2012, the ALJ made several findings relative to the issues raised

in this appeal (Tr. 16–23):

1)   Plaintiff last met the insured status requirements of the Act on June 30, 2007.[3]

2)   Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of July 15, 2002, through his date last insured of June 30, 2007.

3)   Through the date last insured, Plaintiff had the following severe impairments: recurrent folliculitis, arthritis, post traumatic stress disorder ("PTSD"), hypertension, depression, obesity, and hepatitis.

4)   Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5)   Through the date last insured, Plaintiff had the residual functional capacity to perform a range of light or sedentary work as defined in 20 C.F.R. § 404.1567(b).  Plaintiff was limited to simple routine tasks involving no more than simple and short instructions; simple work-related decisions; little workplace changes; and occasional interaction with the general public, coworkers, and supervisors.  Plaintiff was able to concentrate up to two hours at a time.

6)   Through the date last insured, Plaintiff was unable to perform any past relevant work.

---

[3] Thus, the time frame relevant to this appeal is July 15, 2002 (alleged onset) to June 30, 2007 (date last insured).

7)  Plaintiff was born on August 29, 1967, and was 39 years old, which is defined as a younger individual aged 18–49, on the date last insured.

8)  Plaintiff had at least a high school education and was able to communicate in English.

9)  Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not he had transferable job skills.

10) Through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

## III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd.,

921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the  evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant

is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, he is not disabled.

2.     If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.     If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.     Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that

accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.   PLAINTIFF'S PERSONAL AND MEDICAL HISTORY

### A.   Personal History

At his hearing before the ALJ, Plaintiff testified that, while he was working for the United States Navy, he had three surgeries on his right knee beginning in 1992. He returned to light duty work with the Navy, but then re-injured the knee (ECF No. 24, Tr. at 18–20).[4]  While serving in the Navy, Plaintiff also sustained gunshot wounds to his lower left leg and upper right thigh (Id. at Tr. 26).  Plaintiff testified that

---

[4]  This cite and any other referencing ECF No. 24 refer to the Official Transcript of the administrative hearing submitted after the record as a whole—which contained an unofficial transcript—was filed with the court.  The court found no material differences between the two relative to the issues at hand in the instant Report.  In referencing the transcript at ECF No. 24, the court cites to the page numbers reflected on the original transcript, which are found on the upper right-hand corner of each page of the transcript.

he received therapy for his mental health problems while in the Navy but could not remember the time frame (*Id.* at Tr. 20–21).  Plaintiff further testified he would go to group therapy "[m]aybe once, twice a month" (*Id.* at Tr. 21).  Plaintiff received an honorable discharge from the Navy in January of 2001.  He stated that there are days when he stays in bed due to depression and times when he usually spends more than eight hours a day in bed (*Id.* at Tr. 32–33).

Plaintiff stated that he gets painful cysts or bumps on his head from his eczema that also can spread to his armpits and groin (*Id.* at Tr. 18, 25–26).  He also stated the cysts tend to drain at night, requiring him to shampoo in the morning to clean them and apply an antibiotic to keep the infection from spreading (*Id.* at Tr. 22, 25).  In addition to his wounds, Plaintiff related that he had a torn meniscus ligament in his left knee that the doctor said would not bother him too much, a broken right ankle that did not heal correctly, and a broken left ring finger (*Id.* at 26, 29, 35).  Plaintiff testified to having numbness in both of his wound areas and discomfort when he walks (*Id.* at Tr. 34).  He indicated that he can stand but with discomfort, that he cannot squat well, that it is painful to kneel, and that he can climb stairs but struggles (*Id.* at Tr. 31).  Plaintiff stated that if he were to walk one city block, he would be "hurting real good" (*Id.* at Tr. 35).  He stated that he uses a knee brace and a cane (*Id.* at Tr. 29).  Also, because his knees "lock up" in the morning, he heats up wet towels

in the microwave oven and puts them on his knees to help them loosen up (*Id.* at Tr. 22).  Plaintiff provided that he does not do his own laundry (*Id.* at Tr. 22).  He said that he does not cook, either, but more as his own choice, and that his neighbor and friend Ms. Shana Eckford comes over and cooks for him sometimes (*Id.* at Tr. 22–23).  Plaintiff stated that he usually does not eat breakfast, and if he does he usually goes out somewhere (*Id.* at Tr. 23).  He stated he takes approximately 500 milligrams of lortab daily for his pain, which pain he described as being in his ankle, both knees, his head, and upper back (*Id.* at Tr. 30–31).  Plaintiff also testified to having some degree of impairment to his hearing (*Id.* at Tr. 29–30).

Plaintiff's friend Shana Eckford also testified.  She had known Plaintiff since childhood and in 2001she began to visit him a couple of times per week and still does so (*Id.* at Tr. 37–39).  Starting in 2001, she would help him with little things around the house like cleaning and going to the store for him, but she discontinued doing so in 2003 after she was involved in a car accident (*Id.* at Tr. 39).  She stated that for the last two years (therefore, from approximately 2010 to 2012) her sisters and brothers come over and help Plaintiff with the shopping, cleaning, and cooking (*Id.* at Tr. 40).  When asked whether she thought Plaintiff could do these things for himself, she responded that he could probably make his own sandwiches, but he did not generally do his own cooking, cleaning, or clothes washing (*Id.* at Tr. 44).

Ms. Eckford continued by testifying that, starting in 2002, Plaintiff began to seem "different," having trouble staying focused on one thing, having difficulty completing tasks, and seeming different in the way he talked (*Id.* at Tr. 40).  As hypothetical examples, she indicated that if he started raking leaves in the yard he would not be able to finish and that, if he would get ready to take a bath, he would "completely forget about what he [thought] he was doing" (*Id.* at Tr. 41).  She also stated that in 2012 (the time of the hearing) it had become a little worse (*Id.* at Tr. 42). She stated that Plaintiff could try to wash his own clothes but would be likely to forget what he was doing (*Id.* at Tr. 44).

B.      Relevant Medical History

In her review of Plaintiff's medical history during his period of eligibility, the ALJ found the medical evidence of Plaintiff's limitations to be scant, and of the treatment he received to be sporadic and conservative (Tr. 21).  The ALJ noted Plaintiff's ongoing diagnoses of chronic PTSD and recurrent major depressive disorder, which were assessed as mild and mild to moderate, respectively, and she also found Plaintiff "would go over six months without treatment" during this time (Tr. 21).  The ALJ further noted that Plaintiff had reported to his psychologist in 2006 that he was feeling better, except for "occasional episodes of his heart pounding or breaking out into hives when he is in a group of people" (Tr. 21, 370).

The ALJ noted that Plaintiff's most consistent complaint was with dermatological issues in which he would be afflicted with cysts or abscesses (Tr. 21). While recognizing Plaintiff's complaints of pain, particularly neck pain, and his diagnosis of traumatic arthritis, the ALJ noted that the only treatment that was provided was Tramadol three times a day.  The ALJ also mentioned in particular that Plaintiff was reported in November of 2007 to have "no complaints of pain" and to be "ambulating without difficulty" (Tr. 21).  The ALJ accordingly found Plaintiff's knee and ankle problems to be non-severe impairments (Tr. 18).  Last, the ALJ noted Plaintiff's hepatitis diagnosis but also his failure to follow-up on treatment for it prior to the date he was last insured for DIB (Tr. 21).

V.   DISCUSSION

Plaintiff first claims that the ALJ erred by not taking into consideration and according great weight to the medical findings of a Veteran's Administration "adjudication."  As Defendant notes, however, the pages Plaintiff cites appear to not be any sort of adjudication or formal assessment but rather medical notations (Tr. 519–20).  Plaintiff in particular cites the following findings, identified as "S/C Disabilities" in the medical notations:

        10%   Limited motion of  ankle
        50%   PTSD
        10%   Tinnitus
        30%   Eczema

    10%   Paralysis of sciatic nerve
    10%   Limited flexion of  knee
    10%   Superficial scars

Plaintiff notes that the report also separately provides that Plaintiff's "S/C% = 80" and further comments that "the arithmetic is odd" as to these findings (Tr. 519; ECF No. 27 at 4).  The court surmises that the "S/C" abbreviation means "service connected," in keeping with other references to that term within the notes, but it is difficult to discern whether the percentile ratings relate to Plaintiff's amount of disability or the degree to which the identified impairments were caused by or related to Plaintiff's military service.  It is therefore difficult to draw much of import from these notations, much less assign great weight to them.  More important, Plaintiff is identified as being 42 years old at the time the notations were made, and because Plaintiff was born in 1967, this would indicate that the notations were made in 2009 or 2010, well after Plaintiff's date last insured ("DLI") of 2007.

Indeed, as Defendant points out, other parts of the record contain actual Rating Decisions from the VA which determined that Plaintiff had substantive impairments only after his DLI.  One decision, rendered on June 16, 2011, dealt primarily with Plaintiff's PTSD and concluded that Plaintiff's psychiatric symptoms had affected his ability to maintain employment, but only as of June 23, 2010 (Tr. 312).  In fact, it was noted in the decision that Plaintiff had previously undergone a VA examination in

September of 2006, during which time it was determined that his symptoms did *not* affect his employment (Tr. 312).[5]  However, the then-current evidence showed that his symptoms "would lead to reduced reliability and productivity" (Tr. 312).  In a second decision, dated March 3, 2012, Plaintiff's PTSD "rating" of "50 percent disabling" was increased to 70 percent, effective from June 23, 2010 forward, and he was deemed 10 percent disabled for arthritis in his left knee as of April 18, 2005 (Tr. 236).

Accordingly, the court finds that the VA findings described above are not inconsistent with the ALJ's findings relative to Plaintiff's period of eligibility for DLI benefits.  Hence, any perceived error in not directly discussing these findings in his opinion was not prejudicial to the outcome.

Next,[6] Plaintiff claims the ALJ did not properly consider the "pain testimony" that Plaintiff as well as Ms. Eckford provided in arriving at her RFC determination.

A claimant may establish that he has a disability through his own testimony regarding his pain or other subjective symptoms.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).  In such a case, the claimant must show: (1)

---

[5] Plaintiff essentially verifies these dates, testifying that he became eligible for VA benefits on June 23, 2010, after four or five years of trying (ECF No. 24, Tr. at 23–24).

[6] For organizational purposes, the court addresses Plaintiff's third claim next, then his second.

evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  *Id.*  The ALJ is not required to recite the pain standard word for word, but instead, must make findings that indicate that the standard was applied.  *See* Wilson v. Barnhart, 284 F.3d 1219, 1225–26 (11th Cir. 2002) (per curiam) (holding that the ALJ did not err where his findings and discussion indicated that the three-part standard was applied and he cited to 20 C.F.R. § 404.1529; also noting that § 404.1529 "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard.").

If, as here, the ALJ determines under the third prong of the standard that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain, she must then evaluate the extent to which the intensity and persistence of the pain limits the claimant's ability to work.  20 C.F.R. § 404.1529(b). The ALJ may consider the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence relating to how the pain affects the claimant's daily activities and ability to work.  § 404.1529(c).  "While both the Regulations and the Hand [v. Bowen,

793 F.2d 275, 276 (11th Cir. 1986)] standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1215. "[P]ain alone can be disabling, even when its existence is unsupported by objective evidence." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations omitted). The presence or absence of evidence to support symptoms of the severity claimed, however, is a factor to be considered. Marbury v. Sullivan, 957 F.2d 837, 839–40 (11th Cir. 1992); Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

When evidence of pain derives from the subjective testimony of the claimant or other personal witnesses, "and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983). Where the reviewing court is left to infer a finding on credibility from the ALJ's ultimate holding, "such an implication is too subtle to measure up to the degree of precision required of adjudicative fact-finding." Id. at 1255. Failure in this regard requires, as a matter of law, that the subjective testimony in question be accepted as true. Foote, 67 F.3d at 1562 (citing Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir.1988)).

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause some of his pain and other symptoms, but she found Plaintiff not to be credible as far as the intensity, persistence and limiting effects of his symptoms, to the extent they would be inconsistent with the RFC she assigned for light or sedentary work with additional limitations (Tr. 20).  In so finding, the ALJ noted that the medical evidence did not support the level of severity of symptoms and limitations as alleged by Plaintiff.  The ALJ supported this by noting that Plaintiff's doctors did little more than prescribe pain and other medications for Plaintiff and did not prescribe or recommend any other significant treatment during the period of eligibility (Tr. 21). Plaintiff's PTSD was consistently deemed mild, his depression mild to moderate, and the record showed he would go as much as six months between appointments (Tr. 21). The paucity of medical intervention in the record, the routine nature of Plaintiff's checkups, the conservative treatment measures, and the frequent gaps between Plaintiff's medical visits, all served to indicate that Plaintiff's symptoms were generally under control (Tr. 21).  The ALJ further noted that a treating source found in September of 2006 that Plaintiff would be "independent in his activities of  daily living and be able to perform a full range of sedentary or light work activity" (Tr. 21, 421–25, 497).  Finally, a November 2007 medical report noted that Plaintiff was ambulating freely (Tr. 21, 360).

The court finds that the ALJ considered Plaintiff's testimony regarding his pain (Tr. 21), properly evaluated the extent to which Plaintiff's pain intensity and persistence might limit his ability to work, found Plaintiff's testimony inconsistent with the evidence, and adequately sourced her findings in the record.

Next, Plaintiff asserts that the ALJ erred by failing to make reference to the testimony of his friend, Shana Eckford, in her disability decision.  Ms. Eckford's testimony corroborated Plaintiff's own testimony that she would come over and help him with daily activities around his house, and she also offered testimony relative to his mental health difficulties as far as his inability to complete tasks.

While the ALJ has a general duty to develop a full record and consider all the evidence, this does not mean that all the evidence in the case must be expressly addressed in her decision.  Parks ex rel. D.P. v. Commissioner, Social Sec. Admin., 783 F.3d 847, 851–52 (11th Cir. 2015) ("There is no rigid requirement that the administrative law judge specifically refer to every piece of evidence in his decision, so long as our Court can conclude that the administrative law judge considered the claimant's medical condition as a whole") (quoting Mitchell v. Commissioner, Social Sec. Admin., 771 F.3d 780, 782 (11th Cir. 2014)); Dyer v. Barnhart, 395 F.3d 1206, 1210–11 (11th Cir. 2005).  Because the ALJ made express findings against the credibility of Plaintiff's testimony, it may be fairly implied that she also rejected the

similar testimony of his friend Ms. Eckford.  *See* <u>Clyburn v. Commissioner, Social Sec. Admin.</u>, 555 F. App'x 892, 894–95 (11th Cir. 2014) ("Because the ALJ expressly rejected as not credible Clyburn's testimony about the severity of her pain and the extent of her limitations, he impliedly rejected the statements in [her cousin's] affidavit as well.") (citing <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981)); <u>Iordan v. Commissioner, Social Sec. Admin.</u>, 579 F. App'x 775, 779 (11th Cir. 2014). This is particularly so if such additional testimony is duplicative of the plaintiff's. <u>Iordan</u>, 579 F. App'x at 779.

Though Defendant characterizes Ms. Eckford's testimony as completely duplicative of Plaintiff's own testimony, the court finds her testimony regarding Plaintiff's mental capacity to finish tasks to not be duplicative.  Nonetheless, the court finds the testimony to be impliedly rejected in the same fashion as the ALJ rejected Plaintiff's own testimony.  As addressed above with regard to Plaintiff's previous argument, the evidence in the record uniformly showed Plaintiff's mental health symptoms to be mild, his apparent need for professional help to be limited, and, once Plaintiff was professionally seen and/or evaluated, the need for intervention or treatment was in no way seen as acute.  The ALJ thus supported her conclusions as to Plaintiff's mental limitations and thereby impliedly rejected Ms. Eckford's testimony to that extent.

Defendant argues that Plaintiff also failed to specifically show how he was prejudiced and that remanding this case so that the ALJ could explicitly discuss Ms. Eckford's testimony would not alter the ALJ's findings and would only amount to a "wasteful corrective exercise," using up judicial and administrative resources.  *See* Sanchez v. Commissioner of Social Sec., 507 F. App'x 855, 856 (11th Cir. 2013) (citing Ware v. Schweiker, 651 F.2d 408, 412–13 (5th Cir. Unit A 1981)).  This court is in agreement that remanding the case on this issue would result in the fairly ministerial act of the ALJ rejecting Ms. Eckford's testimony on the same basis that she rejected Plaintiff's—namely, that it is simply not borne out in Plaintiff's medical history and is contraindicated by the evidence in the record.  *See* Iordan, 579 F. App'x at 779 ("[R]emanding this case solely to require the ALJ to explicitly address [the] testimony [of the claimant's fiancé] would be a waste of judicial resources, because his statements did not undermine the substantial medical evidence supporting the ALJ's disability determination.").

Last, Plaintiff claims that the hypothetical questions the ALJ posed to the vocational expert ("VE") may have confused the VE because "the ALJ requested the V.E. look back fifteen (15) years before the hearing date of August 14, 2012" (ECF No. 27 at 15).  Plaintiff thus argues that this caused uncertainty as to whether the VE

was testifying with regard to Plaintiff's employability only during Plaintiff's period of eligibility.

In the court's review of the VE's testimony, the only fathomable area where the ALJ asked the VE to "look back fifteen years" would be when she posed the following question: "Could you please tell me the title, exertional level and sill [sic] level of each job that the claimant has performed on a full-time basis for the last fifteen years?" (ECF No. 24, Tr. at 48). This question allowed the VE to introduce Plaintiff's past jobs and their DOT classifications into evidence and to answer the ALJ's first hypothetical question regarding Plaintiff's past work (*id.* at 49–50). The ALJ then proceeded to pose *hypothetical* questions to the VE based on *hypothetical* individuals with limitations derived from the ALJ's own assessment of Plaintiff's RFC. This line of questioning is absolutely the norm in Social Security Act cases such as this, and the court is at a loss as to how the questioning could have possibly confused the VE. Moreover, as Defendant points out, it is solely the province of the ALJ to determine a claimant's RFC during the relevant period of eligibility, and the VE's responsibility is simply to answer whether work exists in the national economy that can be performed by someone with Plaintiff's RFC. *See, e.g.,* Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1270 (11th Cir. 2007). The court perceives no error here.

For all the foregoing reasons, the court finds that the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at1560.  Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED**:

Nancy A. Berryhill is substituted for Carolyn W. Colvin as Defendant in this action.

And it is respectfully **RECOMMENDED**:

That the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida, this 3rd day of March 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**